Good morning, Judge. My name is Jim Ball. I represent Mr. Reyes in this matter. It's a pleasure of mine to be in front of the court. Judge, I'd like to point out in this case, I think the issue in this case is whether the Supreme Court of Idaho considered the writ of habeas corpus from Mr. Reyes, thereby exhausting his state remedies. And I think that's narrowly what the issue has finally come down to in this case, mainly because of the new state court of appeals case, State v. Dodd. And I know that the State has filed that, so I'm sure Your Honors have got that case. I guess my comments on that would be this, is Mr. Reyes believes that his writ in front of the Supreme Court was actually considered on the merits, and therefore exhausting his state claims. What would you with all the statements by the Idaho Supreme Court saying, you know, that only in exceptional circumstances and a rare case will they consider an original writ? That's correct, Judge. I appreciate that question. I think the way it's reconciled, Judge, is to understand this case is you have to understand the pre-habeas statute. The habeas statute was amended in 1999. You have to understand the pre-statute 99 and the post-statute 99. Pre-statute 99, there was a mechanism for people to raise parole denials through the district courts. After 1999, the state legislature amended that statute and made it unclear whether that mechanism was still available to appeal through the district court. I understand the state says that you can appeal it through an attack through a state habeas. However, the statute made it clear was either you could appeal it to the district court if it met five enumerated subsections, which denial of parole was not one of them, or they could appeal directly to the Supreme Court through original habeas. Have you thought about the possibility of certifying this question to the Idaho Supreme Court? Judge, I have not. I can't say that I have thought of that. And I ask the Supreme Court mainly because I think... It's up to them to tell us what the statute means. Well, I understand that some courts have said that it's up to the state courts to interpret the procedure rules. I guess my argument to you, Judge, is that the Supreme Court decided it on the merits. And to go to Judge Paez's question is that it was an extraordinary case, mainly because there was nothing in Idaho precedent to say can a person still go up through the procedural mechanism, through district court, and through habeas. And so there was nothing really there, and so it was unclear. And so being Mr. Reyes, being a pro se petitioner and construing that liberally, he looked at the statute and read the statute. And if you look at it, it kind of says, well, if it doesn't meet this five enumerated category, I guess the only other way I can present this is up through the Supreme Court. And that's what he did. Well, but the court... But there are other statements by the Idaho Supreme Court saying that, you know, you should go to the district, the state district court to raise a habeas relief as well. I think the case you're probably referring to is the Lindquist case, where the Supreme... And that's a Ninth Circuit case. I think that's what you're referring to. Or if you can point me to the case that you're referring to. Isn't there... Aren't there several, like, earlier Idaho cases? Oh, there is. I see what you're saying. Yeah. There is. There's earlier Idaho cases, but they're interpreting that pre-1999 statute. But the right to habeas relief is part of the Idaho state constitution, correct? That's correct, Judge. Yes, it is. Yes, it certainly is. It's still part of the Idaho state constitution. Even after the change in the modifications to the statute, it's part of the Idaho constitution. That's correct. Namely, what DOP has recently decided. Right. DOP explained... In fact, that's what I was thinking of, is how DOP explains the history of, or some of the background to the habeas relief in Idaho. That's correct. And DOP does explain that. And what I'm saying is, at the time that this petition was lodged with the Supreme Court, there was a timeframe from 1999 up to until DOP was actually decided that it was unclear whether you could still proceed straight to the Supreme Court on its original habeas relief or still have to go back through the district courts, if you're going to consider this one issue of the denial of parole. Let me ask you this. Prior to the, you know, the order we have in this case from the Idaho Supreme Court, where it uses that language on due... That's correct, Judge. It's on page 68 of the excerpt. It says the court is fully advised, therefore, and after due consideration. Correct. I'm sure there must have been other instances before this case where petitioners have filed habeas petitions directly with the Supreme Court. Is this the kind of language that they routinely use to deny habeas petitions that should have gone first to the state district court as opposed to... You know, Judge, it's a great question. I can tell you I didn't have access to any type of other orders that talked about that. And I actually looked for it and wasn't able to find other orders in my limited experience in the habeas arena. I wasn't able to, off the top of my head, to be able to come down with that. I know that Mr. Anderson has dealt with habeas relief in Idaho many times, and he could probably answer that question regarding that. I think that it's imperative, and that's part of the argument, is that to look at this order, and I think the one case that's very instructive on this case is your Green case, Lambert v. Green, which is a Washington case. And I think that it distinguishes these type of cases where the court has to look at a Supreme Court's order to find out if it's actually on the merits or if it's a procedural ground. And some of the things that not this panel, but the Ninth Circuit has said in Green, is that you look at was there any comment. Is it ambiguous or is it ambiguous with comment? And I think that's what we're looking at here. Essentially, you have an order that has comment to it. And what I mentioned in my brief was it's treated as a motion. I'm sorry. I'm looking at the wrong one. That considering the affidavit in support of the petition for writ of habeas corpus, a memorandum of law in support and petition for writ of habeas corpus, and after fully considering, therefore, after due consideration, we deny this. I essentially submit that that is on the merits of the case. And also look at other clues in this case would be. Well, if you were in California, you would say it was on the merits. There wouldn't be any question about that. Sure. Lindquist seems to say that in light of the Idaho Supreme Court's strong policy, strong statements that they want these habeas petitions filed in the state district court first because they have jurisdiction on it. They can take the writ proceeding on a direct appeal from the denial of the writ. And that's correct, Judge. And the Lindquist case was decided in 1985. And that case has to do with, like I said, that pre-1999 statute of habeas where it was, at least in Idaho jurisprudence, was you go to the district court up through the appellate court. Right. For this type of thing. But once pre-1999, after 1999, it was unclear which way. But the right to habeas corpus still existed under the state constitution, right? It did. It did still exist underneath the state constitution. That is correct. May I ask you a question? A suggestion was made by Judge Tashima about certifying this question to the Idaho Supreme Court. Is that procedure available to you? Can we do that? Have you requested us to do that? Judge, like I said, I haven't requested a certificate. One of the things that I'm concerned about in this case, if the court finds that he's unexhausted in his state court remedies and he goes back to the state court. He'll be out. He'll be out. Right. He gets out in August. Yeah. He'll be out. And he'll never be able to come in front of the Federal Court again. And so that's the issue. As we go back to the Supreme Court, he's gone, at least for Federal review. Pardon me. I didn't quite follow you. If we ask the Idaho Supreme Court to tell us whether he did exhaust his merits and whether their ruling was one on the merits, you say that if they say, no, we didn't, we dismissed it on the grounds of lack of jurisdiction, then your man is out? Out in the street. I'm sorry. Judge, what I'm saying is, under ADEPA, he would be procedurally barred, I guess, to come back. He would be procedurally barred here and you'd have to start off in the Idaho District Court again. He could go back to the Idaho District Court and go up through the state habeas, as Judge Paglia has said. However, he'll never be able to come back in front of the Federal Court again. He's also scheduled to be released, isn't he, pretty soon? Correct. September 4th. You've got about a minute left. Do you want to save it for later? Oh, great. Thanks, Judge. I appreciate it. September 4th, 2004. May it please the Court, I suspect that one of the reasons that the question has not been certified, or request for certification, is, in fact, that the Petitioner will be released on September 11th, and as a result, because this is a parole, state parole issue, the entire case would then become moot. And so there wouldn't be anything to raise concerns about. In fact, because our Supreme Court generally doesn't meet or hear oral argument in the summer, generally, there are exceptions, I suspect they wouldn't hear this case, in fact, until after he were actually released. Let me ask you a few questions. Yes, Your Honor. After Dopp, isn't it pretty clear? Your Honor. How do you read Dopp? How should we read Dopp? I read Dopp the same way as I read Mahaffey, and that is that there has to be exceptional circumstances before the Idaho Supreme Court is going to consider an original writ of habeas corpus. I don't believe, based upon Dopp, that the 1999 amendments to the State Habeas Act changed anything as far as Lindquist, Mahaffey, Barlow was the very, very early case. In other words, nothing changed. Now, having said that, that was, of course, our State appeal – a State appeals case. It could go before the Idaho Supreme Court ultimately. I believe Mahaffey was an Idaho Supreme Court decision, whereas Dopp, of course, was a court of appeals decision. But I just – Let me see if I understand what you're saying. Okay. As I read – as I understand Dopp, in light of the revisions to the Habeas Corpus and constitutional arguments relating to his parole release proceedings, they're not cognizable under the statutory scheme. But because the Idaho Constitution has formal – you know, has recognized from day one the right to habeas relief, the legislature can't ultimately impair that right, and the district court also has habeas jurisdiction. So go to the district court, and you start there. That is exactly correct, Your Honor. Is that right? That is correct, Your Honor. You have to go. Absent some – some extraordinary circumstances. Right. So the only real question is whether or not the denial – that this – that the Idahos, when they entered that order, they were treating this case as an extraordinary special circumstances kinds of case. Yes, Your Honor. And if you look at the Lindquist opinion, the Lindquist opinion actually indicate – doesn't indicate. It says that there is a presumption that it is not a merits decision. They actually used that decision. So in this particular case, the Petitioner would be required to overcome that particular presumption. Now, is there anything unique about the language that was used in this case as far as you know? Absolutely none, Your Honor. In fact, I did go back and have in front of me, and would certainly be willing to supplement or move to augment the record if necessary after argument, the order from the Lindquist opinion. And they used the exact same language. Interestingly enough, there is a member – former member of the Idaho Supreme Court in the audience today, and he could tell you that the same language has been used for years. That language that – Or it is fully advised. After due consideration and being fully advised in the premises. That is the exact language that was used in Lindquist. That's the exact language that was used in this case. Yes, Your Honor. That is the language that is used. Anytime it's summarily used. If we were to agree that he hadn't – that he – that that petition to the Idaho Supreme Court did not constitute proper exhaustion, it was an attempt to exhaust, but not proper under Castile, what's the procedural posture of the case? The case has to go back and be refiled before the district court. The State District Court. Yes, I need – State District – or magistrate, the district court division. Yes, Your Honor. Now, is he – is he procedurally barred, or is he – is there any – Your Honor, I am not aware of any State opinions that indicate that there would be a procedural bar because it wasn't addressed on the merits in front of the Idaho Supreme Court. They simply – So there's no timeliness problem? There is no statute of limitations as far as State habeas in this case. What is your – what is your take on the State v. Parrott, which I read to be almost contradictory to Dopp? Your Honor, as I read Parrott, I don't believe that the issue that was raised in Dopp was raised in Parrott. And I'm having a hard time finding my notes on Parrott. Certainly the issue of the new statute was not raised. In Parrott, what we had was an attempt to circumvent Idaho's post-conviction laws, which govern ineffective assistance of counsel. In other words, as a general rule, defendants, petitioners are not permitted to raise ineffective assistance of counsel claims on a direct appeal. And that – or in a State habeas. Those have to be raised in post-conviction. And that was the attempt in Parrott. They were raising IAC claims. No, but Parrott says that his – Parrott's motion to amend the motion into a petition for rid of habeas corpus, right, was properly denied because of the grounds he asserted, not one of the grounds provided for in the new statute. And I recognize that particular language in Parrott, Your Honor. I don't believe, as I said, that the issue of – well, actually, it goes like this. What we have is a situation where it can't be amended under the new statute. But had they raised the argument that it could be raised in State court under Idaho's Constitution because the legislature can't infringe upon that constitutional basis of the writ, it could have been raised. And they didn't raise it in the proper procedural manner, Your Honor. They could have filed a habeas petition. That's not what Parrott says, though. Parrott says, you know, the district court didn't err, not, you know, letting him amend this into a habeas petition because the statute doesn't provide – doesn't recognize this as a ground for habeas. Under the statute, that is correct, Your Honor. But under the State Constitution, that was not correct. And because Parrott did not raise the State constitutional issue, the issue as to whether it could be amended under the State Constitution was not raised. He didn't raise either the statute or the Constitution. He said, I want to amend this into a petition for habeas. And the court of appeals says, no, you can't amend it because the statute says you can't. Is that what's going to happen? It could have said, you know, well, he should be able to amend it because he has a constitutional right. But it didn't say that. In other words, Parrott – the conclusion from Parrott is that this whole thing is governed by the new statute. The statute properly limits the grounds. But, Your Honor, that is in direct contravention of Mahaffey and, of course, the more recent case of Dopp where the issue was expressly raised in Dopp. That's exactly what I'm saying. Dopp and Parrott are, you know, in contradiction to each other. So it's hard for us to tell which way the Supreme Court would go. Well, Your Honor, Mahaffey was an Idaho Supreme Court decision. Parrott was a court of appeals decision where the question was not directly raised. It was raised in the context of a motion to amend. It was not raised in the context of whether there is a constitutional right to raise the issue before – in fact, a constitutional duty to raise the issue before the district courts of Idaho. That's Mahaffey. That's Mahaffey and that is Dopp, Your Honor, both decisions, Your Honor. If there are no further questions, Your Honors, the State would request that the magistrate in this case be affirmed, particularly based upon Dopp and based upon the case of Lindquist and Sweet v. Cup. All right. Thank you, Your Honor. Thank you, Mr. Anderson. Thanks again, Your Honors. I appreciate this. I'd just like to point out, I think that at the time that this petition was raised in front of the Supreme Court is that at that time there was extraordinary circumstances to take this up to the Supreme Court at the time, mainly because there was not any case law to bring this case to the district court. I think, being that considered the case, that the presumption would be that the Supreme Court did take this case on the merits. I think Lindquist can be distinguished mainly because of the pre-1999 statute. There was case law suggesting that these cases were due to come up to the district court, but after 1999 there wasn't case law. Does the term exceptional circumstances need to mean anything more than circumstances for habeas which are not set out in the statute and, therefore, require direct by the Supreme Court? Judge, that's my position. I just think that there was nothing at the time and nothing in the statute that can say anything otherwise. So that's why it went up to the Supreme Court and that's why I'm considering or that's why we're arguing that it was considered on the merits. Thank you very much. I appreciate it. All right. Thank you. We thank both counsel. This case is submitted for decision. Next case on the argument calendar. Shown on the calendar is Doe v. United States. I think it's really Kimberly v. United States. Doe is the applicant for intervention. In any event, Doe is the appellant, right? Yes, Your Honor. All right. Go ahead. Thank you, Your Honor. This case presents the question of whether a district court can order equitable relief against a Federal agency. Speak a little louder. Put that microphone closer to you. I thought I was speaking too loud. This case presents the question of whether a Federal district court can order equitable relief against a Federal agent in the face of the express terms of a Federal statute. My name is Robert Manke. I represent the appellant Ann Doe. And I would like to reserve five minutes of time for rebuttal. We have two appeals today, one on the denial of intervention to my client below and one from the merits of the judgment. And I would like to turn first to the issues that go to the merits of the judgment and are below. And there are three parts to my argument. The first is that this Court's prior decision in the Kimberly case didn't resolve the issues before the Court on this appeal, did not dictate the entry of judgment below. Second, then, presented is the question of how ordinary principles of contract interpretation applied in this case affect the judgment and are below, and whether judgment was properly entered on the contracted issue here under ordinary principles of contract interpretation. And then third, even if the contract between the Farmers Home Administration and Kimberly expressly waived the congressional power to pass the OLYMPUS statute, was that authority delegated to the Farmers Home Administration by Congress in the early 80s? Because it was not expressly delegated, even if the contract says what Kimberly has argued that it says, nevertheless, injunctive relief is not appropriate and the only remedy available to Kimberly is money damages. Let me ask you this. After our opinion in Kimberly won, how do you understand, what was the
judges: Tashima, Paez, Bea